IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THOMAS SAVOIE,

                 Plaintiff,                      No.  3:10-cv-1580-AC

     v.

MICHAEL J. ASTRUE,              ORDER
Commissioner of Social Security,

                 Defendant.

HERNANDEZ, District Judge:

Magistrate Judge Acosta issued a Findings and Recommendation (#20) on June 21, 2012,

in which he recommends the Court reverse the Commissioner's decision denying plaintiff

disability benefits and remand for further proceedings.

Plaintiff and defendant have timely filed objections to the Findings and Recommendation.

The matter is now before me pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil

1 - ORDER

Procedure 72(b).

When any party objects to any portion of the Magistrate Judge's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate Judge's report.  28 U.S.C. § 636(b)(1); <u>Dawson v. Marshall</u>, 561 F.3d 930, 932 (9th Cir. 2009); <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

The primary objections raised by the parties involve the opinions of examining psychologists Dr. David R. Truhn and Dr. John R. Finney.  In her relatively short written decision, Administrative Law Judge (ALJ) Mauer rejected plaintiff's claim for disability benefits at step two of the sequential analysis, concluding that the objective medical evidence in the record did not establish the existence of a medically determinable impairment through plaintiff's date of last insured, September 30, 2004.  Tr. 16.

In regard to Dr. Truhn, the ALJ noted that Dr. Truhn's examination of plaintiff occurred in July 2008, and that Dr. Truhn relied primarily on plaintiff's own memory and the observations of his friends and relatives in reaching his conclusions.  <u>Id.</u>  The ALJ did not have the benefit of Dr. Finney's opinion, which was obtained after the ALJ issued her decision and was subsequently submitted to the Appeals Council.

I.  Dr. Truhn

In the Findings and Recommendation, Judge Acosta concluded that plaintiff failed to show that the ALJ improperly rejected Dr. Truhn's opinion.  Findings & Rec. at p. 9.  Judge Acosta noted that Dr. Truhn conducted a clinical interview and mental status evaluation, administered various psychological tests, reviewed plaintiff's available medical records, and considered several lay witness statements.  <u>Id.</u> at pp. 6-7 (citing Tr. 583-96).  Judge Acosta also

2 - ORDER

noted that Dr. Truhn diagnosed plaintiff with chronic post-traumatic stress disorder (PTSD), panic disorder with agoraphobia, severe major depressive disorder, late onset dysthymia, and alcohol dependence in early full remission by plaintiff's report. Id. at p. 7 (citing Tr. 594). Judge Acosta remarked that Dr. Truhn also wrote that plaintiff's PTSD "maximally" met PTSD diagnostic criteria, and further explained that plaintiff's symptoms diminished when he was intoxicated with alcohol and marijuana. Id. (citing Tr. 594). Judge Acosta quoted Dr. Truhn's opinion that based on plaintiff's report, "'the symptoms have been severe since he quit medicating himself with alcohol in about 2003.'" Id. (quoting Tr. 595).

The ALJ's sole mention of Dr. Truhn's report was, as noted above, that Dr. Truhn examined plaintiff in July 2008, but relied primarily on plaintiff's own memory and observations of his friends and relatives. Tr. 16. In the same paragraph, the ALJ stated that "[t]he fact that [plaintiff] neglected to seek out medical care from the V.A. or civilian sources around the time of his date of last insured demonstrates that his impairments were not as severe as he now alleges." Id.

Judge Acosta stated that while the ALJ discussed plaintiff's failure to seek treatment, the ALJ "did not indicate that this analysis was linked to Dr. Truhn's opinion." Findings & Rec. at p. 7. Judge Acosta found that the "ALJ neither clearly accepted nor clearly rejected Dr. Truhn's opinion." Id.

In his Memorandum submitted to Judge Acosta, plaintiff argued that Dr. Truhn's statement regarding plaintiff's decreased alcohol use and increased PTSD symptoms established that plaintiff's PTSD was severe before his September 30, 2004 date of last insured. Id. Judge Acosta found that the record did not support plaintiff's assertion because Dr. Truhn "made no

3 - ORDER

clear finding that [plaintiff] carried a PTSD diagnosis prior to September 30, 2004." Id. (citing Tr. 594-96). Judge Acosta also found that while Dr. Truhn later submitted a statement to plaintiff's counsel "endorsing various work-related limitations as of that date," Dr. Truhn's clinical notes did not explain the endorsements. Id. Judge Acosta concluded that because an ALJ may properly reject physician opinions which are brief, conclusory, and inadequately supported, plaintiff's argument failed. Id. at pp. 7-8.

As I understand the ALJ's decision, the ALJ concluded that there was no objective medical evidence in the record to support a finding that plaintiff suffered from a medically determinable impairment before plaintiff's last insured date of September 30, 2004. The ALJ rejected Dr. Truhn's opinion that plaintiff's symptoms were severe commencing with his cessation of alcohol in December 2003 because that portion of Dr. Truhn's opinion was based only on plaintiff's memory and statements from friends and family. The ALJ determined that plaintiff's statements were not credible because of his failure to seek treatment "around the time of his date last insured" and not until June 2005.

I agree with plaintiff that the ALJ erred in rejecting Dr. Truhn's opinion and thus, I do not adopt this finding by Judge Acosta. As I view the record, it shows that Dr. Truhn made a clear finding that plaintiff carried a PTSD diagnosis prior to September 30, 2004. As indicated, Dr. Truhn diagnosed plaintiff with chronic PTSD and explained that plaintiff appeared to "maximally meet the criteria" of the disorder. Dr. Truhn expressly stated that plaintiff's symptoms of the disorder had been severe since plaintiff quit using alcohol in 2003. Dr. Truhn also expressly found plaintiff to be "accurate in his verbal responses and his response style seem[ed] to be consistent with the medical records and the personality inventories." Tr. 594. He also found that

4 - ORDER

the "personality inventories are not indicative of embellishment or exaggeration, but they are indicative of severe symptoms." Id. Dr. Truhn's opinion indicates that plaintiff suffered from severe PTSD symptoms since sometime in December 2003, when plaintiff quit drinking.

I also agree with plaintiff that the issue is more accurately analyzed as one regarding the onset date. At step two, the ALJ determines if the plaintiff has a severe impairment, meaning an impairment that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If an impairment has more than a minimal effect on an individual's physical or mental abilities to do basic work activities, it is severe. Soc. Sec. Ruling (SSR) 85-28 (available at 1985 WL 56856, at *3) ("an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities"); see also SSR 96-3p (available at 1996 WL 374181, at *1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

The ALJ determined only whether plaintiff suffered from a severe impairment during the relevant time period from the alleged onset date through the date of last insured. In a case seeking only DIB benefits, the plaintiff must establish disability before the date of last insured, meaning the establishment of a severe, disabling, medical impairment before that date. However, the record in this case demonstrates that subsequent to the last insured date, the plaintiff clearly suffered from a severe impairment. Importantly, plaintiff establishes a severe impairment with objective medical evidence such as the clinical interview and testing performed by Dr. Truhn in July 2008. Thus, plaintiff does show, with appropriate evidence, the existence of a severe medically determinable impairment at least as of the time of Dr. Truhn's report. This is not a

case where there is insufficient evidence to establish a severe impairment at any time.

As a result, the appropriate question is not whether plaintiff has established a severe impairment at all, but when did his severe impairment begin?

As noted above, the ALJ rejected Dr. Truhn's opinion regarding the onset of plaintiff's severe symptoms because it was based on plaintiff's self-report. And, he found plaintiff not credible because of his delay in seeking treatment until June 2005. The ALJ erred in both instances.

SSR 83-20, available at 1983 WL 31249, addresses the onset of disability. Importantly, it notes that "[i]n many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits." 1983 WL 31249, at *1. Thus, while the existence of a severe impairment is a separate question from the onset of that impairment, this policy statement indicates that the onset date may indeed be determinative of disability benefits in a particular case.

Additionally, here, as explained above, substantial evidence in the record establishes that plaintiff has a severe impairment and suffers from disabling symptoms. When the issue is the date the impairment became disabling, SSR 83-20 is appropriately applied. At least two other district courts have reached the same conclusion. Turtle v. Astrue, No. CIV-10-452-KEW, 2012 WL 984495, at *3 (E.D. Okla. Mar. 22, 2012) (in a case where the plaintiff alleged disabling PTSD and where the ALJ determined at step two that the plaintiff did not suffer from a medically determinable impairment before the date of last insured, court rejected defendant's argument that SSR 83-20 did not apply to a case where the ALJ failed to find an impairment and disability; the

court noted that the argument "makes no logical sense" because "an ALJ who chooses to end the sequential evaluation prematurely precludes a claimant from later arguing a progressive condition relates back before the expiration of the date of insured status"); Kirkwood v. Astrue, No. 09-1347, 2010 WL 3239167, at *1 (E.D. Pa. Aug. 11, 2010) (remanding to ALJ for appointment of medical advisor under SSR 83-20 to assist in establishing onset date of plaintiff's PTSD when the ALJ found no objective evidence that plaintiff's onset date was before her date of last insured).

Under SSR 83-20, factors relevant to the onset of disability "include the individual's allegation, the work history, and the medical evidence." 1983 WL 31249, at *1. While the factors are evaluated together, an individual's allegations or the date of work stoppage "is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." Id.

The regulation discusses onset in disabilities of traumatic origin separately from those of non-traumatic origin. Id. at 2. Although PTSD has its origins in a traumatic event, "it is an unstable condition that may not manifest itself until well after the stressful event which caused it[.]" Jones v. Chater, 65 F.3d 102, 103 (8th Cir. 1995). Thus, it is readily distinguishable from disabling injuries caused, for example, by a traumatic car accident. See Magnusson v. Astrue, No. 08-cv-276-PB, 2009 WL 995480, at *8 (D.N.H. Apr. 13, 2009) ("while PTSD is caused by a traumatic event, it does not necessarily manifest itself simultaneously with the causal event.") (citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000)).

Judge Acosta noted that plaintiff failed to cite any authority in support of his assertion that PTSD was a progressive impairment and further, that no evidence of record suggested that

plaintiff had "progressive" PTSD.  However, as the <u>Jones</u> court suggested, PTSD is akin to progressively debilitating diseases.  <u>Id.</u> (noting that"[a]lthough PTSD may not be degenerative in the same classic sense as a condition like diabetes," it is an "unstable condition" "and may wax and wane after manifestation.").  SSR 83-20 directs that in such circumstances, the "date alleged by the individual should be used if it is consistent with all the evidence available."  1983 WL 31249, at *3.

Plaintiff's alleged onset date is December 1, 2003.  Tr. 13.  As the ALJ noted, plaintiff has no significant earnings after 2002.  Tr. 15.  Under SSR 83-20, the ALJ must consider the available medical evidence in view of the nature of the impairment.  1983 WL 31249, at *3.  "In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination[.]"  <u>Id.</u>  "How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case."  <u>Id.</u>  In some cases, it may be necessary for the ALJ to consider lay evidence, including information from family members and friends.  <u>Id.</u>

Given that SSR 83-20 applies to this case, and given that in determining the onset date, the ALJ is not limited to the objective medical evidence, it was error for the ALJ to reject Dr. Truhn's onset date opinion because that opinion was based on plaintiff's self-report.  SSR 83-20 requires the ALJ to assess all of the evidence, including plaintiff's asserted onset date, his work history, and the medical evidence, such as Dr. Truhn's opinion, as well as relevant lay evidence, and to assess the medical evidence in view of the nature of the impairment.

Additionally, the ALJ invalidated plaintiff's credibility, and thus the statements he made

to Dr. Truhn regarding the severity of his symptoms, because of plaintiff's failure to seek treatment "around the time of this date last insured." Tr. 16.  The ALJ may consider an unexplained or inadequately explained failure to seek treatment in evaluating a claimant's credibility.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  However, no adverse credibility finding is warranted where a claimant has a good reason for failing to obtain treatment.  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

Plaintiff testified that he did not understand that he could obtain treatment for his "mental problem" through the Veteran's Administration (VA) until the summer of 2005.  Tr. 90.  Dr. Truhn also noted that patients with PTSD often avoid treatment because it is distressing and can exacerbate the symptoms of the illness.  Tr. 595; see also Tr. 422 (VA counselor Susan Aviotti noting on July 1, 2007 that during treatment, plaintiff was too depressed to return phone calls or attend therapy at times); Tr. 595 (Dr. Truhn opined that plaintiff did not attend therapeutic activities due to symptoms of panic interfering with his mobility in the community).

The Ninth Circuit has explained that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation omitted).  In Nguyen, the court held that "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate."  Id.  Such is the case here.  In light of plaintiff's testimony regarding his lack of knowledge as to treatment options for his "mental problem" and the difficulty for PTSD patients to seek treatment, as noted by Dr. Truhn, the fact that plaintiff did not seek treatment for his previously-undiagnosed PTSD until June 2005 or

9 - ORDER

later, is not a legitimate basis upon which to find his statements regarding the severity of his symptoms not credible.

It was error for the ALJ to reject Dr. Truhn's opinion that plaintiff experienced severe PTSD symptoms in 2003 at the time plaintiff quit drinking.  Under SSR 83-20, the ALJ should have considered more than just objective medical evidence, and the ALJ did not have a legitimate basis to reject plaintiff's subjective symptom statements as reported to Dr. Truhn.

II.  Dr. Finney

Dr. Finney evaluated plaintiff on December 9, 2008, after the ALJ issued her decision. Tr. 601-07.  He reviewed plaintiff's available medical records, including Dr. Truhn's report, and conducted a clinical interview.  Id.  He assessed plaintiff with "chronic, severe" PTSD, a single episode of major depressive disorder in partial remission, alcohol and drug abuse, in early or sustained full remission, and a cognitive disorder NOS.  Tr. 607.  Dr. Finney also stated that plaintiff was "unemployable due to mental health issues."  Id.

As to the onset date of plaintiff's PTSD, Dr. Finney summarized the record and opined as follows:

> [I]n June 2005 he said that he had been having vivid nightmares since January 2005.  In October 2005 he was questioned more closely about the onset of his nightmares and he estimated that it was about a year or more previously [Oct 2004 or earlier] that he began to have nightmares and thoughts of his past miliary experience.  By January 2005 they had become quite severe.  When I questioned him and pushed him to be more specific about the onset, I concluded that it was about January or February 2004, the time shortly after he stopped drinking.  At this point his repression broke down and he began to have conscious awareness of the troubling memories and nightmares about the incident in Korea in which he was responsible for the deaths of several people.

Tr. 606 (second set of brackets in original).

10 - ORDER

Dr. Finney's opinion was submitted to the Appeals Council which received the report and made it part of the record. Tr. 5. However, the Appeals Council concluded that Dr. Finney's report provided no basis for changing the ALJ's decision because, just like Dr. Truhn's opinion, Dr. Finney's report "also reflects reliance on subjective reporting [and] Dr. Finney's statement that your mental symptoms began or became severe in early 2004 appears to be inconsistent with the lack of any mental health treatment during that time." Tr. 2.

Judge Acosta concluded that Dr. Finney's "evidence strongly suggests that [plaintiff] experienced PTSD prior to his September 30, 2004, alleged onset date"[1] and that the "evidence is relevant to a determination of [plaintiff's] disability." Findings & Rec. at p. 10. As a result, Judge Acosta concluded that reversal was required to allow consideration of this "onset date evidence." Id. at pp. 10, 11.

I agree with Judge Acosta. Dr. Finney's opinion is relevant to, inter alia, the establishment of plaintiff's onset date. For the reasons explained above regarding Dr. Truhn's opinion, the fact that Dr. Finney based his opinion of plaintiff's onset date on plaintiff's own report is not a basis for rejecting that opinion. This evidence, considered in light of the record as a whole, supports reversal of the ALJ's finding at step two.

III. Remand for Payment of Benefits or for Additional Proceedings

Judge Acosta recommends that the case be remanded for additional proceedings because while Dr. Finney opined that plaintiff would miss work two to four days of work per month, there is no evidence in the record to demonstrate that such a limitation establishes disability.

---

[1] Judge Acosta mistakenly referred to September 30, 2004 as the alleged onset date. September 30, 2004 is plaintiff's date of last insured. His alleged onset date is December 1, 2003.

11 - ORDER

Findings & Rec. at pp. 10, 13.  Judge Acosta noted that while a vocational expert (VE) was present at the hearing, neither the ALJ nor plaintiff's counsel asked the VE to testify regarding the effects of plaintiff's alleged limitations upon his ability to perform work in the national economy. Id. at p. 13.  He further noted that because the ALJ did not progress beyond step two of the sequential analysis, this Court could not consider whether Dr. Finney's opinion would support an RFC that establishes disability at steps four or five.  Id.

If Dr. Finney's report provided the only evidence of functional limitations in the record, I would adopt Judge Acosta's recommendation that remand for additional proceedings is appropriate.  I agree with his finding that without additional evidence in the record, Dr. Finney's opinion that plaintiff would miss a couple of days of work each month is not, by itself, sufficient to establish disability.

But, because I do not adopt Judge Acosta's finding regarding the proper treatment of Dr. Truhn's report, I conclude that remand for an award of benefits is the proper course.  Dr. Truhn examined plaintiff on July 29, 2008.  Tr. 583.  As noted above, Dr. Truhn conducted a clinical interview and mental status evaluation, administered various psychological tests, reviewed plaintiff's available medical records, and considered several lay witness statements.

Dr. Truhn assessed plaintiff's Global Assessment of Functioning (GAF) score at the time as 42.  This corresponds to "serious symptoms" such as suicidal ideation, or "serious impairment in social, occupational, or school functioning" such as having no friends and an inability to keep a job.  American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000).  Additionally, Dr. Truhn stated that plaintiff's symptoms have "chronically impaired his social and vocational functioning[.]"  Tr. 596.

12 - ORDER

Only ten days later, Dr. Truhn completed a chart assessing plaintiff's functional limitations. Tr. 597-600. There, he rated plaintiff moderately-severely impaired or severely impaired in sixteen out of twenty functional skills. Tr. 597-99. He also opined that plaintiff had a substantial loss of the ability to (1) understand, remember, and carry out simple instructions; (2) make judgments that are commensurate with the functions of unskilled work, meaning simple work-related decisions; (3) respond appropriately to supervision, co-workers, and usual work situations; and (4) deal with changes in a routine work setting. Tr. 599. He expressly stated that these limitations existed at the assessed level of severity since plaintiff's alleged onset date.[2] Tr. 600. There is no dispute that when crediting Dr. Truhn's as true, plaintiff is disabled as a result of the severe functional limitations he experiences and has been since his alleged onset date.

Judge Acosta found that Dr. Truhn's clinical notes did not explain his work-related limitations, providing a basis for the ALJ's rejection of these limitations. Findings & Rec. at pp. 7-8 ("The ALJ may reject physician opinions that are brief, conclusory, and inadequately supported"). There are two problems with this finding.

First, Dr. Truhn's narrative report was issued only ten days before his functional assessment and the only fair reading of the record is to consider them together. The functional limitations here are not a "check the box" form untethered from any clinical assessment and

---

[2]    The date of September 30, 2004 is handwritten in a part of the form asking about the onset date. The boilerplate portion of the form states that "[o]ur client seeks to be declared disabled as of the _____ day of _____, 199__." Tr. 600. Presumably, this date was filled in by plaintiff's counsel. But, as indicated above, plaintiff seeks to be declared disabled as of December 1, 2003. The person filling out this portion of the form incorrectly inserted the date of last insured, September 30, 2004, instead of the alleged onset date. Given Dr. Truhn's narrative explaining his opinion that plaintiff's symptoms have been severe since 2003 when he quit drinking, I construe his statement here as opining that plaintiff's limitations have existed at this level of severity since the alleged onset date of December 1, 2003.

observation.  Instead, for example, Dr. Truhn assessed plaintiff's ability to understand and remember detailed instructions to be severely limited.  Tr. 597.   In his narrative report, Dr. Truhn noted that he observed that plaintiff had difficulty concentrating, that plaintiff reported forgetting to take his medications, that testing showed evidence of a cognitive disorder, that plaintiff scored in the borderline range on tests measuring attention to detail, and that individuals with plaintiff's profile experienced problems concentrating.  Tr. 583-600.  In his conclusion, Dr. Truhn also repeated his observation that plaintiff had difficulty concentrating during testing.  Tr. 595.  Other examples are apparent when the narrative report is read in conjunction with the functional assessment form.  Thus, this case is distinguishable from those where there is no narrative, clinical examination, or testing accompanying a "check-the-box" form.

Second, the ALJ made no express mention of Dr. Truhn's functional assessments, and did not reject them for being insufficiently supported.  The only reason the ALJ gave for rejecting Dr. Truhn's opinion was that Dr. Truhn relied on plaintiff's memory and on the observations of plaintiff's relatives and friends.  Tr. 16.  The court is "constrained to review the reasons the ALJ asserts," Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003), and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision[.]" Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).  It is improper for this Court to reject Dr. Truhn's functional assessments for a reason not articulated by the ALJ.

Accordingly, when Dr. Truhn's functional limitations are considered and credited, there is no reason to remand for additional proceedings.  His limitations establish disability and additional proceedings are unnecessary.

/ / /

14 - ORDER

CONCLUSION

The Court ADOPTS IN PART Magistrate Judge Acosta's Findings and Recommendation [#20] and therefore, the Commissioner's decision is reversed and remanded for a determination of benefits.

IT IS SO ORDERED.

DATED this _____25_____ day of _____July_____, 2012.


_____
MARCO A. HERNANDEZ
United States District Judge